**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**CASE NO.:  1:22-cv-00100-RP**

MIGHTY MUG, INC.,

        Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

        Defendant.

---

## MOTION FOR DEFAULT FINAL JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b) and the Clerk's entry of default (DE - 24), Plaintiff, Mighty Mug, Inc. ("Plaintiff" or "MMINC") hereby moves for an order of default judgment and permanent injunction against the following Defendant Doe Nos.: 1-3, 10, 13, 16, 18, 20, 21, 24, 25, 27, 28, 32, 36, 38, 40-45, 49-56, 59, 61, 62, 67, 68, 70-72, 74, 76, 79, 83-199, 201-225, 227-231, 233, 236-255 ("Defaulting Defendants"). *See* **Schedule B**, appended hereto. In support of this motion, Plaintiff relies on the record in this case and the attached, incorporated exhibits, and declarations. Plaintiff respectfully asks the Court to enter Default Judgment against the Defaulting Defendants in the amount specified herein, enter an Order for Permanent Injunction and award Plaintiff its attorneys' fees and costs incurred in prosecuting this lawsuit.

### I.      PROCEDURAL BACKGROUND

On February 10, 2022, Plaintiff filed the Amended Complaint in this case against the Defendant Doe Nos. identified in Schedule "A" to the Amended Complaint. (DE - 8, 8-1).

Plaintiff filed an *ex parte* Motion for a Temporary Restraining Order ("TRO") seeking, *inter alia*, an order authorizing alternate service of process by email and electronic publication to Defendants Identified on Schedule "A" to Plaintiff's Complaint. (DE – 3). The Court granted Plaintiff's Motion for TRO on March 8, 2022 (DE – 15), and entered an Order authorizing alternative service of process through e-mail and electronic publication. (DE – 13).

Plaintiff served Defaulting Defendants with the A m e n d e d  Complaint, Plaintiff's Application for TRO, the TRO, Plaintiff's Motion to Extend the TRO and the Order extending the TRO on April 25, 2022, pursuant to the Court's March 2, 2022 Order, and as evidenced by Plaintiff's Certificate of Service. (DE – 23, DE – 27, DE - 30).

Plaintiff filed a Motion for Preliminary Injunction on August 10, 2022 against all Defendant Does except Nos. exception of defendants numbered 7, 8, 9, 11, 14, 15, 17, 22, 26, 29, 30, 31, 34, 57, 58, 64, 65, 66, 73, 75, 78, 80, 81, 82, 234, and 235. (DE – 44). Following a preliminary injunction hearing on October 7, 2022, at which no Defendants appeared, (Min. Entry, DE - 56), the Court entered a preliminary injunction on October 7, 2022. (DE – 57).

Following Plaintiff's motion for entry of default, the Clerk entered default against each of the Defaulting Defendants on October 14, 2022. (DE – 59).

## II.     STATEMENT OF FACTS

MMINC is a New Jersey Corporation with its principal place of business in Rahway, New Jersey. The Founder and Chief Executive Officer of MMINC is Jayme Smaldone. (DE – 11, henceforth "Smaldone Decl." ¶ 4.) MMINC was founded in 2012 and has been in continuous operation since then. (Smaldone Decl. ¶ 6.).

MMINC sells a variety of spillproof mugs and drinkware products under the MIGHTY MUG Mark. (Smaldone Decl. ¶ 10.) MMINC's products are sold through its own website,

www.mightymug.com and authorized distrubitors such as Ace Hardware. (Smaldone Decl. ¶ 9.)

MMINC offers for sale and sells its products within the state of Texas, including this district, and

throughout the United States. (Smaldone Decl. ¶ 10.) Online sales of MIGHTY MUG products

via the web represent a significant portion of plaintiff's business. (Smaldone Decl. ¶ 24.) Like

other intellectual property rights owners, MMINC suffers ongoing violations of its rights by

counterfeiters and infringers, such as defendants herein. (Smaldone Decl. ¶ 11.) This harms

MMINC, it dupes the consuming public, and the defendants earn substantial profits. (Smaldone

Decl. ¶ 12.)

   To combat the harm caused by defendants' infringing conduct, MMINC spends money on

legal fees and investigative fees to enforce its intellectual property rights. (Smaldone Decl. ¶ 13.)

The explosion of internet infringement forced MMINC to spend time and money to protect itself

and its customers from the confusion and brand erosion. (Smaldone Decl. ¶ 14.)

   The success of MIGHTY MUG products resulted in counterfeiting by individuals and

entities unlawfully using the trademarks and goodwill built by MMINC to sell cheap imitation

counterfeits of MMINC products. (Smaldone Decl. ¶ 42.) The MIGHTY MUG Mark was never

assigned or licensed to any of the defendants. (Smaldone Decl. ¶¶ 50, 54.) Despite defendants'

lack of authority, they are promoting, advertising, distributing, selling and/or offering for sale,

through their respective Seller IDs, goods bearing counterfeit and infringing copies of the

MIGHTY MUG Mark, without authorization ("Defendants' Goods"). (Smaldone Decl. ¶¶ 14,

53.)

   MMINC's anticounterfeiting program investigates suspicious websites and online

marketplace listings identified in proactive internet sweeps and reported by consumers.

(Smaldone Decl. ¶ 43.) Plaintiff investigated the promotion and sale of counterfeit and infringing

products by defendants to obtain payment account information for funds paid to defendants for the sale of counterfeit products. (Smaldone Decl. ¶ 46, 57.) These investigations established that defendants use Amazon, Wish, eBay, AliExpress, Alibaba, DHGate, Joom, Etsy, Shopify, and others to sell Counterfeit Products from foreign countries such as China to consumers in the United States. (Smaldone Decl. ¶ 44.) MMINC accessed defendants' internet based e-commerce stores operating under their seller identification names through Alibaba.com, AliExpress.com, Amazon.com, DHGate.com, eBay.com, Etsy.com, Joom.com, Newegg.com, Shopify.com, and Wish.com. (Smaldone Decl. ¶ 45.) MCINC's Smaldone or someone under his supervision viewed counterfeit products using the MIGHTY MUG Mark, added products to the online shopping cart, proceeded to a point of checkout, and exchanged data with each e-commerce store. (Smaldone Decl. ¶ 46.) MMINC's Smaldone or someone under his supervision placed test orders from certain defendants via their e-commerce stores operating under the Seller IDs for the purchase of various products all bearing counterfeits and infringements of the MIGHTY MUG Mark and the MMINC Patents. (Smaldone Decl. ¶ 57, Ex. 1)

MMINC's orders were processed entirely online and following the submission of the orders, MMINC received information to finalize payment for each of the products ordered via a payment processor on Alibaba.com, AliExpress.com, Amazon.com, DHGate.com, eBay.com, Etsy.com, Joom.com, Newegg.com, Shopify.com, and Wish.com. (Smaldone Decl. ¶ 58.) MMINC's Smaldone or someone under his supervision captured detailed web pages for each defendant reflecting each counterfeit or infringing product bearing counterfeits and infringements of the MIGHTY MUG Mark. (Smaldone Decl. ¶ 53, Ex. 1.) These web pages show defendants slavishly copy the MIGHTY MUG Mark and offer defendants' Goods for sale under identical marks indistinguishable to consumers, both at the point of sale and post-sale.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

(Smaldone Decl. ¶ 57, Ex. 1) Defendants created a false association between their counterfeit and infringing goods, their e-commerce stores, and plaintiff, and this false association causes plaintiff irreparable harm and damage. (Smaldone Decl. ¶ 64.)

MMINC's Smaldone or someone under his supervision personally analyzed each of the captured web pages and determined that Counterfeit Products were being offered for sale to residents of the United States. (Smaldone Decl. ¶ 53, Ex. 1) Plaintiff or someone under plaintiff's supervision reviewed and visually inspected the detailed web page captures and photographs reflecting the plaintiff branded products and determined the products were not genuine versions of plaintiff's goods. (Smaldone Decl. ¶ 54.)

Comparison of the MIGHTY MUG Mark to the marks used by Defendants reveals the obvious counterfeit and infringing nature of Defendants' Goods. (Compare MIGHTY MUG with defendants' Seller IDs shown in Schedule A to the complaint and the counterfeit product listings in Composite Exhibit 1 to the Smaldone Decl.) Due to the nature of the Defaulting Defendants' illegal counterfeiting activities, monetary damages cannot adequately compensate Plaintiff for the Defaulting Defendants' ongoing infringements because monetary damages fail to address the loss of quality control and damage to Plaintiff's reputation and goodwill. DE - 3-1 at ¶¶ 31-35. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate the measurable damage in dollars and cents that the Defaulting Defendants' acts of infringement

caused  to  Plaintiff.

*Id.*

Many of the Defaulting Defendants have since withdrawn funds in the accounts associated with their webstores. This speaks to the willful nature of the Defaulting Defendants'

infringing activities and highlights the need for imposing maximum statutory damages and Plaintiff's cost of defense on the Defaulting Defendants. As such, Plaintiff seeks to enforce its rights, to recover statutory damages from the Defaulting Defendants, and to obtain a permanent injunction against any further infringing activity by the Defaulting Defendants.

### III.    ARGUMENT

The well-pleaded allegations of fact in the Amended Complaint and record on file in this action entitle Plaintiff to default judgment against the Defaulting Defendants on Plaintiff's claims for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), common law unfair competition (Count III) and common law trademark infringement (Count IV). *See* DE - 8.

### A. Plaintiff Met Default Judgment Requirements

#### 1.  Standard of Review

Federal Rule of Civil Procedure 55(a) provides that a default judgment is proper "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). In considering any motion for default judgment, the court must examine (1) jurisdiction, (2) liability, and (3) the relief requested because parties are not "entitled to a default judgement as a matter of right." *Gather v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996); *see generally Wooten v. McDonnald Transit Assocs, Inc.*, 788 F.3d 490 (5th Cir. 2015) (holding default judgment was proper where the complaint was well-pleaded and indicated liability, that the court had jurisdiction, and that plaintiff was entitled to the relief awarded). Although default judgments are generally disfavored, the policy against default judgments is "counterbalanced by considerations of social goals, justice and expediency, a weighing process that lies largely within the domain of the trial judge's discretion." *Wooten*, 788 F.3d at 496. A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact . . . and is barred

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

from contesting on appeal the facts thus established." *Nishimatsu Const. Co. v. Houston Nat.*

*Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A default judgment is unassailable on the merits, but

only so far as it is supported by well-pleaded allegations that are assumed to be true. *Wooten*,

788 F.3d at 496.

## 2. Jurisdiction and Venue Are Proper in This Court

The Court has original subject matter jurisdiction over Plaintiff's claims because this

action is founded upon violations of Federal trademark and copyright laws pursuant to 15 U.S.C.

§§ 1051, et seq. and 17 U.S.C. §§ 501, et seq. *See* DE - 1 at ¶ 2-4. Venue is proper in this District

pursuant to 28 U.S.C. § 1391 because the Defaulting Defendants are entities or individuals

subject to personal jurisdiction in this District.

The Defaulting Defendants are subject to the personal jurisdiction of this Court because

each Defendant directly targets/targeted its business activities toward consumers in Texas and

knowingly caused harm to Plaintiff and its members within this judicial district. Each Defaulting

Defendant targets Texas residents by offering to sell and selling its Counterfeit Products to

consumers within the State of Texas through fully interactive commercial internet webstores,

offers shipping to Texas and has shipped Counterfeit Products to residents of Texas. Moreover,

Defendants knew or should have known their tortious acts caused injury to Plaintiff in Austin,

Texas because Plaintiff offers for sale and sells a variety of MIGHTY MUG products in this

district, holds a registered trademark for its MIGHTY MUG Product and has extensively

advertised its 100% American made product since its introduction in

2012. DE - 3-1 at ¶¶ 6-10. Plaintiff further advertises and sells the MIGHTY MUG

Products on similar Internet Webstores, such as Amazon. DE - 3-1 at 11. Therefore, the Court

can exercise personal jurisdiction over each Defaulting Defendant.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

**B. The Defaulting Defendants' Liability Has Been Established**

Plaintiff served each of the Defaulting Defendants with the Amended Complaint on April 26, 2022, May 25, 2022 and on June 13, 2022 pursuant to the Court's Order authorizing alternative service of process by electronic mail or publication. DE – 23, 27, 30. More than 21 days have passed since the Defaulting Defendants were served and no answer or other responsive pleading has been filed. *See* Fed. R. Civ. P. 12(a)(1)(A). Default judgment is thus appropriate.

**1. Trademark Infringement and False Designation of Origin Claims are Meritorious**

Plaintiff brought Count I for Trademark Infringement and Count II for Counterfeiting (False Designation of Origin) under the Lanham Act. To prevail on a claim for trademark infringement and counterfeiting under the Lanham Act, the plaintiff must show: "(1) [it] possess a legally protectable trademark, and (2) [Defendant's] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (citations omitted). "A 'likelihood of confusion' means that confusion is not just possible, but probable." *Mission Pharmacal Co. v. Virtus Pharmaceuticals, LLC*, 23 F.Supp.3d 748, 759 (W.D.Tex. 2014). The Fifth Circuit has provided eight non-exhaustive "digits of confusion" for courts to consider in determining whether a likelihood of confusion exists: (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion, and (8) the degree of care exercised by potential purchasers. *Streamline Prod. Sys.*, 851 F.3d at 453. When a defendant uses a plaintiff's exact mark, "a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists." *Choice Hotels Int'l v. Patel*, 940 F. Supp. 2d 532, 540 (S.D. Tex. 2013).

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Here, the record establishes Defaulting Defendants' liability for Count I, trademark infringement and counterfeiting under the Lanham Act. Plaintiff alleges in the Complaint to own a valid and protectable United States Trademark in the word "MIGHTY MUG", Registration No. 4191803. (DE - 8 at ¶ 21; 4-2 (Exhibit 1)). Plaintiff further alleges the MIGHTY MUG trademark is highly distinctive, has been in continuous use since its date of registration on August 14, 2012 (and thus "incontestable" under 15 U.S.C. § 1115(b)), and is associated in the public mind with Plaintiff's products. *See* DE - 8 at ¶¶ 21, 22; DE - 4-1 at ¶¶ 4, 10, 12, 14.

The Defaulting Defendants knew of Plaintiff's rights in the MIGHTY MUG mark, knew they were not authorized to use the MIGHTY MUG mark, and knew their use of Plaintiff's mark on the Counterfeit Products is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products. DE - 8 at ¶ 64, 77; DE - 4-2, ¶¶ 11-12, 71, 74. Plaintiff provided evidence demonstrating each Defaulting Defendant is using the exact same mark on its respective Counterfeit Product as Plaintiff's MIGHTY MUG. There is little difference in the overall design and appearance between the two word marks used and the two products offered for sale. Products. DE - 8 at ¶¶ 96-101; DE - 4-2, at ¶ 75. The Counterfeit Product have caused and will continue to cause confusion with Plaintiff's trademarked MIGHTY MUG Products.

Plaintiff also satisfied the likelihood of confusion test. DE - 4 at 12-17 and DE - 15 at 6-7. Plaintiff incorporates herein the arguments and evidence sufficient to show a likelihood of confusion in its Motion for Temporary Restraining Order (DE - 4 at 12-17); Motion for Preliminary Injunction (DE - 44 at 3-8) and the Court's findings that Plaintiff satisfied the likelihood of confusion test (DE - 15 at 6-7 and DE - 57).

The well-pleaded allegations in the Complaint and the evidentiary record on file establish the Defaulting Defendants' liability for trademark infringement and counterfeiting. Plaintiff has no adequate remedy at law, however, and will continue to suffer irreparable harm and injury to its goodwill, reputation, and sales without an order permanently enjoining the Defaulting Defendants' infringing activities. Accordingly, Plaintiff requests entry of judgment on Count I for willful trademark infringement and counterfeiting and for entry of a permanent injunction against each of the Defaulting Defendants.

### 2. Common Law Unfair Competition Claim is Meritorious.

Generally, the same evidence that supports an action for trademark infringement under the Lanham Act also supports an action for unfair competition. *Marathon Mfg. Co.*, 767 F.2d at 217. Plaintiff has established the merits of its trademark infringement claims, therefore likelihood of success is also shown for plaintiff's unfair competition claim.

### 3. Common Law Trademark Infringement Claim is Meritorious.

The same test applies to common law trademark infringement as to federal trademark infringement. See *Liquid Manna, LLC v. GLN Glob. Light Network, LLC*, No. SA-14-CV-1123-DAE, 2016 WL 4385587, at *2 (W.D. Tex. Feb. 24, 2016), report and recommendation adopted, No. 5:14-CV-1123-DAE, 2016 WL 4385589 (W.D. Tex. Mar. 14, 2016). Plaintiff has satisfied the three elements of its trademark counterfeiting and infringement claims, therefore common law trademark infringement is also established.

### C. Plaintiff Is Entitled To Monetary Relief

Under Rule 54(c) of the Federal Rules of Civil Procedure, "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. Rule Civ. P. 54(c). Pursuant to Rule 8(a)(3) of the Federal Rules, the demand for relief must be specific. Fed. Rule Civ. P. 8(a)(3). In the instant case, Plaintiff's Complaint prays for, among other

things, "statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the MIGHTY MUG Mark;" and "[t]hat Plaintiff be awarded its reasonable attorneys' fees and costs." DE - 8 at 17-22.

### 1.  Maximum Statutory Trademark Damages Are Appropriate

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, Section 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). The Fifth Circuit has recognized that district courts have wide latitude in deciding whether to require an evidentiary hearing before entering default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing Fed. R. Civ. P. 55(b)(2)). Where "the amount claimed is a liquidated sum or one capable of mathematical calculation[,]" an evidentiary hearing is not required. *James*, 6 F.3d at 310.

Willfulness does not always require actual knowledge, but rather can be established based on willful blindness. *Rolex Watch U.S.A., Inc. v. Munn*, No. 6:19-CV-00323-JCB, 2019 WL7500499, at *4 (E.D. Tex. Nov. 7, 2019), *report and recommendation adopted*, No. 6:19-CV-00323, 2020 WL 90618 (E.D. Tex. Jan. 7, 2020) (citing *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1010 (S.D. Tex. 2000)). In addition, several Circuit Courts of Appeal, as well as courts within the Fifth Circuit, have found willful conduct where a defendant's infringing acts were committed with a "reckless disregard . . . toward a trademark

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

owner's rights." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 693 (W.D. Tex. 2008) (referencing *Berg v. Symons,* 393 F. Supp. 2d 525, 539–40 (S.D. Tex. 2005)).

As indicated in Plaintiff's Complaint, the Defaulting Defendants facilitated sales by using the MIGHTY MUG marks on their website store listings as genuine MIGHTY MUG products. (DE - 4, DE - 4-3, 4-4, 4-5, 4-6, 4-7.)  The Defaulting Defendants' direct copying and  use  of  Plaintiff's MIGHTY MUG mark demonstrates the Defaulting Defendants knew their activities infringed on Plaintiff's rights, or at least shows the Defaulting Defendants were willfully blind, and/or acted with reckless disregard to Plaintiff's rights. The Defaulting Defendants' acts were committed willfully, and therefore subject to the maximum statutory award.

The Lanham Act's statutory damages provision was designed to ensure a plaintiff is adequately compensated, and a maximum statutory damage award serves the need to deter the use of counterfeit marks and future infringement. *Philip Morris USA Inc.*, 547 F. Supp. 2d at 695–96. In similar cases involving willful counterfeiting, courts have awarded the plaintiff maximum statutory damages pursuant to Section 1117(c)(2) to punish the defendants for their counterfeiting activities, to deter the defendants and others from bringing counterfeit goods into commerce, and to adequately compensate the plaintiff. *Phillip Morris USA Inc. v. Marlboro Express,* No. CV–03–1161, 2005 WL 2076921, at *6 (S.D.N.Y. Aug. 26, 2005); *Philip Morris USA Inc. v. Banh et al.,* No. CV 03–4043, 2005 WL 5758392, at *7 (C.D. Cal. Jan. 14, 2005); *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 501–02 (C.D. Cal. 2003). Although Section 1117(c) contains a dollar range for a possible statutory damage award, the only guidance provided by the statute on how to determine a damage award within the statutory range is "as the court considers just." 15 U.S.C. § 1117(c). Courts have awarded high damage amounts

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, No. CIV.A.09-4215 JBS, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010) ("[counterfeiting] cases often have high damage awards due in part to the wide market exposure that the Internet can provide"); see also *Burberry Ltd. & Burberry USA v. Designers Imports, Inc.*, No. 07 CIV. 3997 (PAC), 2010 WL 199906, at *10 (S.D.N.Y. Jan. 19, 2010) (holding a large damage award was necessary, in part, because the defendant had the "ability to reach a vast customer base through internet advertising"). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of Section 1117(c), and based on previous rulings by this Court on similar claims, Plaintiff respectfully requests the Court's entry of an award of $100,000.00 against each Defaulting Defendant.

## 2. Plaintiff Entitled to Fees and Costs

Plaintiff seeks recovery of its reasonable and necessary attorney's fees and costs pursuant to Section 1117(a) of the Lanham Act. A court may award attorney's fees for a Section 1125(a) violation in "exceptional cases." 15 U.S.C. § 1117(a). The Fifth Circuit has found "exceptional cases" when the defendant acts maliciously, fraudulently, deliberately, or willfully. *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992). Courts in this circuit have also routinely characterized a defendant's improper conduct as deliberate, willful, knowing, and intentional simply by virtue of the defendant's default. *Real Estate Edge, LLC v. Campbell*, No. 1:17-CV-1093-RP, 2019 WL 830966, at *6 (W.D. Tex. Feb. 21, 2019); *Epic Tech, LLC v. Lara*, No. 4:15-cv-01220, 2017 WL 5903331 (S.D. Tex., Nov. 29, 2017) (Court entered default judgment for willful trademark and copyright infringement, awarded statutory damages, awarded reasonable attorneys' fees and costs and entered a permanent injunction.).

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Here, Plaintiff is entitled to recover its attorney's fees because it is the prevailing party on its claims against the Defaulting Defendants for willful trademark infringement, false designation of origin counterfeiting, common law unfair competition, and common law trademark infringement against the Defaulting Copyright Defendants. The Defaulting Defendants willfully used Plaintiff's MIGHTY MUG mark to advertise and sell the Counterfeit Products. DE - 8 at ¶ 75; DE  4-3, 4-4, 4-5, 4-6, 4-7. Furthermore, the Defaulting Defendants failed to answer Plaintiff's Complaint or otherwise defend the lawsuit, thereby establishing the Defaulting Defendants' improper conduct was committed deliberately, willfully, knowingly, and intentionally simply by virtue of their default. Defaulting Defendants could have easily avoided the need for suit if they had honored Plaintiff's intellectual property rights but chose to infringe instead. Moreover, Defaulting Defendants did not and cannot claim to be innocent infringers. Consequently, costs of suit and reasonable attorneys' fees are appropriate.

The declaration of Plaintiff's attorney, Joel B. Rothman, establishes the reasonable attorneys' fees incurred by Plaintiff for the prosecution of this lawsuit as of the date of filing totals **$75,801.50**. (Rothman Decl.); *see also Christus Health Care Sys., Inc. v. Am. Consultants RX, Inc.*, SA:12–CV–1221–DAE, 2014 WL 1092096, at *6 (W.D. Tex. Mar. 18, 2014) (calculating attorney's fees for copyright and trademark infringement together under the loadstar method). Plaintiff also seeks recovery of its costs and expenses incurred in bringing this lawsuit pursuant to 15 U.S.C. § 1117(a); and asks the Court to determine the amount to be awarded upon subsequent submission of a bill of costs.

### D.  Plaintiff Entitled to Permanent Injunction

Section 1116(a) authorizes courts to issue injunctions to prevent and restrain trademark violations. *See* 15 U.S.C. § 1116(a). Thus, in addition to the above requested relief, Plaintiff

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

respectfully requests entry of a permanent injunction enjoining the Defaulting Defendants from continuing their infringing use of Plaintiff's MIGHTY MUG mark.

A plaintiff seeking a permanent injunction must generally satisfy a four-factor test: (1) the plaintiff has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate compensation; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) a permanent injunction would not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). All four factors weigh in favor of granting a permanent injunction against the Defaulting Defendants.

Here, each factor weighs in favor of granting a permanent injunction. With respect to irreparable harm and inadequate remedies at law factors, Plaintiff's allegations and uncontroverted evidence establishes the Defaulting Defendants used Plaintiff's MIGHTY MUG mark and corresponding copyrighted photographs to advertise and sell Counterfeit Products. CITES. The Defaulting Defendants' unauthorized and infringing use of Plaintiff's MIGHTY MUG mark and copyrighted photographs has already caused immeasurable damage to Plaintiff. Indeed, merely the possibility of harm to Plaintiff's reputation constitutes irreparable harm sufficient for a permanent injunction. *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding irreparable harm based upon potential damage to reputation). Therefore, the first two factors weigh in Plaintiff's favor.

The relative hardship factor also tips in Plaintiff's favor. Plaintiff served Defaulting Defendants with the Complaint, Plaintiff's Application for TRO, the TRO, Plaintiff's Motion to Extend the TRO and the Order extending the TRO on April 25, 2022, pursuant to the Court's March 2, 2022 Order, and as evidenced by Plaintiff's Certificate of Service. (DE – 23, DE – 27,

DE - 30). Plaintiff gave the Defaulting Defendants more than adequate notice of this lawsuit and the ability to appear in this case. Plaintiff continues to suffer hardship, however, as long as the Defaulting Defendants are using and continuing to use its federally protected MIGHTY MUG mark and corresponding copyrighted photographs. The only hardship the Defaulting Defendants face is to stop using Plaintiff's protected intellectual property.

The public interest factor also weighs in favor of an injunction because the public interest and the Lanham Act would be undermined if the Defaulting Defendants' improper conduct is allowed to continue. Permanently enjoining the Defaulting Defendants will therefore advance the public interest by protecting brand strength and goodwill and by maintaining the integrity of the Lanham Act.

The Lanham Act also authorizes the Court to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent [unfair competition or false designation of origin]." 15 U.S.C. § 1116(a). A permanent injunction is thus appropriate because only a permanent injunction will effectively restrain the Defaulting Defendants from further unlawful use of Plaintiff's trademark.

Plaintiff therefore asks the Court to permanently enjoin the Defaulting Defendants from using its MIGHTY MUG mark, branding, or any colorable imitation thereof; engaging in any further action that is likely to confuse, mislead, or deceive others into believing that the Defaulting Defendants, or their products and services, are connected with, sponsored by, or approved by Plaintiff; and engaging in any other activity constituting unfair competition with Plaintiff or infringing on Plaintiff's intellectual property rights.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## IV.    CONCLUSION

Awarding maximum statutory damages in this case deters the Defaulting Defendants and others from engaging in infringing conduct, compensates MIGHTY MUG for such infringement, and admonishes the Defaulting Defendants for neglecting to participate in this litigation. This, in turn, promotes judicial efficiency and the just resolution of legal matters. An award of the statutory maximum further protects both MIGHTY MUG's valuable intellectual property rights and the integrity of the Lanham Act itself. MIGHTY MUG thus respectfully requests the Court to enter an order granting MIGHTY MUG all of its damages pled herein, issue a permanent injunction enjoining the Defaulting Defendants from selling the Counterfeit Products, and order that all assets in the Defaulting Defendants' Amazon, eBay, Alibaba, AliExpress, Joom, PayPal, Wish, Payoneer, WorldFirst, Bill.com, Western Union, MoneyGram, or other domestic and foreign bank accounts, as well as any newly discovered assets, be transferred to MIGHTY MUG.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

DATED: December 22, 2022                    Respectfully submitted,


                                            */s/  Craig A. Wirth*
                                            CRAIG A. WIRTH
                                            craig.wirth@sriplaw.com
                                            JOEL B. ROTHMAN
                                            joel.rothman@sriplaw.com

                                            **SRIPLAW, P.A.**
                                            21301 Powerline Road
                                            Suite 100
                                            Boca Raton, FL  33433
                                            561.404.4350 – Telephone
                                            561.404.4353 – Facsimile

                                            *Counsel for Plaintiff Mighty Mug, Inc.*

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK